### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF OKLAHOMA

JENARO MARTINEZ,                    )
                                    )
            Plaintiff,              )
                                    )
                                    )  Case No. CIV-20-270-RAW-KEW
                                    )
COMMISSIONER OF THE SOCIAL          )
SECURITY ADMINISTRATION,            )
                                    )
            Defendant.              )

## REPORT AND RECOMMENDATION

Plaintiff Jenaro Martinez (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1]    Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 48 years old at the time of the ALJ's decision. He has a marginal education and past work as a plumber helper and heating, ventilation, and air-conditioning (HVAC) helper. Claimant alleges an inability to work beginning on May 1, 2016, due to limitations resulting from lumbosacral spine disorder, left knee disorder, hypertension, high cholesterol, asthma, rheumatoid arthritis, a neurocognitive disorder, and type II diabetes mellitus.

## Procedural History

On May 15, 2017, Claimant filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. His application was denied initially and upon

reconsideration. On May 6, 2019, ALJ Clifford Schilling conducted a hearing in Fort Smith, Arkansas, at which Claimant testified. On March 2, 2020, ALJ Timothy Suing, a different ALJ, entered an unfavorable decision.[2] Claimant requested review by the Appeals Council, and on July 22, 2020, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error when evaluating his subjective complaints by finding they were inconsistent with the evidence as a whole. He maintains that his subjective complaints support a finding for a more restrictive RFC than for light work.

---

[2]    Although Claimant makes mention of the change in ALJ between the hearing and time of decision, he does not make any argument that he was harmed by the reassignment.

4

### Evaluation of Subjective Complaints

In his decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the left knee, sleep apnea with a deviated nasal septum, obesity, a neurocognitive disorder, a somatic disorder, and a mood disorder with anxiety and depression. (Tr. 24). He determined Claimant could perform light work with additional limitations. Claimant could lift and carry twenty pounds occasionally and ten pounds frequently. He could stand and/or walk six hours out of eight hours and sit for six out of eight hours. Claimant could push and pull the same limits as for lift and carry. He was limited to performing work with interpersonal contact being incidental to the work performed and the complexity of the task was learned by rote, with few variables and little judgment. Supervision would be simple, direct, and concrete. (Tr. 26).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of power screwdriver operator, bottle line attendant, and production assembler, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 31-32). As a result, the ALJ concluded Claimant was not under a disability from May 1, 2016, through the date of the decision. (Tr. 32).

Claimant contends the ALJ improperly considered his subjective complaints in light of the objective medical record as a whole. Specifically, he argues that although the ALJ determined his subjective complaints were inconsistent with the objective evidence of record, he also found that his subjective complaints were consistent with certain medical opinions in the record, primarily those from non-examining state agency physicians and psychologists. He maintains that the decision should be remanded for the ALJ to make further findings consistent with the medical records and the recommendations from his treating physicians.

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific

evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of his evaluation of Claimant's pain and other symptoms, the ALJ noted the two-step process for the evaluation of symptoms set forth in Social Security Ruling 16-3p and the requirements under 20 C.F.R. § 404.1529. He determined Claimant's medically determinable impairments could reasonably cause his alleged symptoms, but he found that Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence in the record. (Tr. 26-27).

In making his determination, the ALJ summarized Claimant's testimony in detail. He noted that Claimant's self-employment venture with his wife "could approach substantial gainful activity using self-employment standards[,]" but determined the evidence was insufficient regarding the nature of Claimant's self-employment. He discussed Claimant's report that he was unable to walk more than twenty minutes without a break, could not exert himself for more than fifteen to twenty minutes, could not sit more than forty-five minutes before having to get up, and could not lift more than ten pounds. He referenced Claimant's testimony that he only slept around four hours per night, which resulted in his taking daily naps. Claimant reportedly is unable to read or write in Spanish or English. He testified he took one muscle

relaxer daily for pain and took over-the-counter Aleve. (Tr. 27, 45-46, 54-55, 62-63).

The ALJ also relied on inconsistencies between Claimant's subjective complaints and the objective medical findings. He discussed medical evidence of Claimant's back and left knee impairments, specifically pointing out that there was no evidence that Claimant was unable to ambulate effectively. He noted there was evidence that Claimant sometimes walked with a limp (Tr. 27, 313, 318, 445, 458), but at other examinations, Claimant presented with normal gait and balance. (Tr. 506, 512, 527, 553). Coupled with Claimant's self-employment work, the objective evidence persuaded the ALJ that Claimant did not have a "knee abnormality that preclude[d] the performance of work consistent with the determined RFC." (Tr. 27).

Regarding Claimant's sleep apnea, the ALJ noted that a follow-up appointment in April of 2019 showed Claimant exhibited no respiratory or breathing difficulties and that he failed to comply with a referral for an overnight sleep study. (Tr. 27, 592). The ALJ determined that environmental restrictions were not warranted because of Claimant's nasal septum and obstructive sleep apnea, but the ALJ did limit Claimant to light work based upon his subjective complaints of breathing difficulties and fatigue. (Tr. 27). He further considered Claimant's obesity and determined that

it could exacerbate Claimant's back and knee pain, which he accounted for by limiting Claimant to light work. (Tr. 28).

The ALJ also referenced clinical findings relating to all of Claimant's physical impairments which supported a finding that Claimant could perform light work, including normal musculoskeletal system findings of no neurological deficits and normal gait in April of 2016 and similar findings through January of 2019 (Tr. 28, 410, 394, 400, 405, 506, 512, 521, 527, 546, 553). He additionally relied upon findings from February through October of 2017 revealing normal strength and negative straight leg raising on the right and positive straight leg raise on the left, antalgic gait with limp on the left, no sensory or motor deficits in the lower extremities, generalized discomfort with range of motion in the left knee and a slight limp, and antalgic gait but no abnormal motor movements or physical asymmetries. (Tr. 28, 313, 318, 453, 445). The ALJ accounted for Claimant's subjective complaints of pain, noting Claimant attempted to alleviate his pain through multiple epidural steroid injections. (Tr. 28, 339, 343).

Moreover, the ALJ considered the record regarding Claimant's mental impairments, finding it significant that Claimant had not sought mental health treatment. Claimant had not had any psychiatric hospitalizations, and although Claimant had occasional thoughts of suicide, he had no intention of following through. (Tr. 28). The ALJ discussed in detail the findings from Claimant's

psychological consultative examinations in August of 2017 and October of 2017. (Tr. 28-29, 437-42, 444-47). Based on the October of 2017 examination, he limited Claimant to tasks learned by rote with few variables and requiring little judgment and simple, direct, and concrete supervision. Even with the cognitive difficulties noted in the examinations, the ALJ noted Claimant had retained the ability to engage in self-employment and these difficulties therefore did not preclude him from engaging in work activities. (Tr. 29).

Further, the ALJ considered Claimant's subjective complaints in relation to the medical opinion evidence. Regarding his physical impairments, he found the opinions of the state agency medical consultants persuasive to the extent they determined Claimant could perform light work. He noted that the "assessments of light exertion also consider[ed] the [C]laimant's subjective complaint of pain given his history of receiving epidural steroid injections for his lumbar pain as well as surgery for his knee pain." (Tr. 29, 83-85, 101-03). He specifically discussed the opinion by Claimant's physician, Thomas E. Cheyne, M.D., from August of 2016, wherein he recommended Claimant lift no more than ten pounds and perform no repetitive bending, twisting, or lifting. If Claimant was to work, Dr. Cheyne indicated he would need to sit or stand occasionally as needed. (Tr. 30, 345). The ALJ found Dr. Cheyne's opinion was not persuasive because the clinical findings in the

record indicated that Claimant possessed a greater level of functioning, e.g., the medical evidence showed Claimant's motor and sensory functioning was generally normal and he also had a normal gait, with occasional antalgic gait and limp. (Tr. 30).

Regarding his mental impairments, the ALJ considered the assessments by the state agency psychologists, finding them persuasive as they were "consistent with the findings from his mental status examinations [and] also consider[ed] findings of irritability and self-reports of trust issues." (Tr. 29, 81-83, 85-87, 98-100, 103-105). He also discussed the opinions from Claimant's two mental examinations. He found the examination by Theresa Horton, Ph.D. in August of 2017 persuasive because it was "generally consistent with her examination of the [C]laimant and [was] consistent with a restriction to tasks learned by rote with few variables and simple, direct, and concrete supervision." (Tr. 30, 437-42). Regarding Claimant's mental examination by Russell D. Pella, Ph.D., in October of 2017, the ALJ determined it was not persuasive because it was unsupported by the record as a whole, the restrictions were inconsistent with Claimant's prior work history, and there was no treating mental health evidence. (Tr. 30, 444-47). The ALJ, however, "gave some benefit of the doubt by considering the [C]laimant's scores and psychometric testing in finding the mental residual functional capacity." (Tr. 30).

Based upon the evidence as a whole and Claimant's subjective complaints, the ALJ reached the following conclusion:

> In sum, the above residual functional capacity assessment is supported by the longitudinal record. While the [C]laimant's impairments are severe in that they have more than a minimal effect on his ability to function, they are not totally disabling and do not preclude the performance of all substantial gainful activity.

(Tr. 30).

The ALJ's evaluation of Claimant's subjective complaints was linked to the evidence and included specific reasons for the weight given to Claimant's symptoms. Based upon the evidence of record, the ALJ concluded Claimant had an RFC to perform light work with additional mental limitations related to his mental impairment. This Court finds no error in the ALJ's assessment of Claimant's subjective complaints.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate

review of this decision by the District Court based on such findings.

DATED this 16th day of August, 2022.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE